# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| Rosela Rowell, | ) | Civil Action No. 3:09-03077-MBS-PJG |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Palmetto Health Alliance, also | ) | |
| known as Palmetto Health, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Rosella Rowell ("Plaintiff") filed this action against Defendant Palmetto Health Alliance, also known as Palmetto Health ("Defendant"), alleging that she was subjected to a hostile work environment because of her race, color, and national origin, and retaliated against in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17. This matter is before the court on Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which motion was filed on November 17, 2010. (ECF No. 23.) Plaintiff filed opposition to Defendant's motion on December 10, 2010, ECF No. 27, to which Defendant filed a reply on December 17, 2010, ECF No. 28.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, the matter was referred to United States Magistrate Judge Paige J. Gossett for pretrial handling. On August 17, 2011, the Magistrate Judge issued a Report and Recommendation in which she recommended that Defendant's motion for summary judgment be granted. (ECF No. 32.) Plaintiff filed objections to the Report and Recommendation on September 16, 2011, ECF No. 34, to which Defendant filed a reply on September 29, 2011, ECF No. 38. For the reasons set forth below, the court **ACCEPTS**, in part, the Report and Recommendation of the Magistrate Judge and **GRANTS**

1

Defendant's motion for summary judgment as to Plaintiff's claim for hostile work environment, but **DENIES** Defendant's motion with respect to Plaintiff's claim for retaliation.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The facts as viewed in the light most favorable to Plaintiff are discussed thoroughly in the Report and Recommendation.  The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate.  The court adopts this summary as its own, and will only reference facts pertinent to this analysis of Plaintiff's claims.

Plaintiff is an American citizen of color, of Filipino origin, and of Asian race.  (ECF No. 27, p. 4.)  Plaintiff was employed by Defendant from January 18, 2008 to May 14, 2008 as a Medical Technologist III in the Hematology section of the Laboratory Services Department at Palmetto Health Richland in Columbia, South Carolina.  (ECF No. 23-2, p. 12 at 42:14-18; ECF No. 23-3, p. 23.)  At Defendant's orientation for new employees, Plaintiff was provided information applicable to the employment relationship that defined, among other things, the expected standards of behavior, the company's prohibition of harassment, and the structure of the Human Resources Department. (ECF No. 23-2, p. 16 at 57:1-58:11; ECF No. 23-3, pp. 2-4.) The information on harassment provided by Defendant defined the conduct that constituted impermissible harassment pursuant to Defendant's policies, set forth complaint procedures for employees to follow to report harassment, and identified contact information of Defendant's human resource business partners in the event an employee was subjected to or witnessed unwelcome harassment.  (ECF No. 23-3, pp. 2-4.)

As a new employee, Plaintiff was required to train on the systems and procedures that she would be using during her employment.  (ECF No. 23-7, p. 11 at 38:13-39:22.)  Trainers,

identified as Leigh Stowe ("Stowe"), Sylvia Singletary ("Singletary"), and Sandy White (hereinafter collectively called the "trainers"), were responsible for ensuring that Plaintiff became proficient in and felt comfortable performing discrete laboratory procedures, before she was released to perform those procedures on her own. (ECF No. 23-2, p. 33 at 125:15-21, 128:15 - 129:1.) At the time of her hire, Plaintiff was the only trainee that would be working first shift in Hematology. (ECF No. 23-2, p. 20 at 75:24-76:17.)

Plaintiff alleges that the trainers' attitudes toward her changed after she told them she was Filipino. (ECF No. 23-2, pp. 26-27 at 100:22-105-4.) Plaintiff alleges that the trainers, after learning of her origin, looked at her differently and spoke to her with a different tone of voice. (ECF No. 23-2, pp. 27-28 at 104:14-105-4.) Plaintiff further alleges that the trainers treated her "like a second-class citizen," "down-talked" to her, "became hostile," and "would not give me information that I needed." (ECF No. 23-2, pp. 29-30 at 111:17- 113-6.) On February 29, 2008, Plaintiff told her supervisor, Christy Knight, about the hostility she was experiencing. (ECF No. 23-2, pp. 35-36 at 133:25-137:22.) Plaintiff further expressed her frustrations to Knight about the perceived inadequacy of her training, which Knight in response told Plaintiff to "just be patient." (ECF No. 23-2, p. 28 at 107:21-108:1.)

By the beginning of April 2008, Knight begun to have concerns about Plaintiff's ability to perform her job. (ECF No. 23-4, p. 17 at 63:19-64:13.) Knight specifically questioned Plaintiff's judgment and ability to work within Defendant's procedures. (ECF No. 23-4, p. 19 at 70:4-71:17.) Knight asked the trainers to provide her with written notes regarding Plaintiff's job performance to assist her (Knight) in preparing a performance improvement plan ("PIP") for

Plaintiff. (ECF No. 23-4, p. 6 at 17:2-19.) The notes Knight received stated, among other things, that Plaintiff became argumentative if she did not agree with a procedure, did not take control of her mistakes, blamed her mistakes on improper training, and did not always ask for help. (See ECF No. 27-8, pp. 25-30.)

On April 18, 2008, Plaintiff allegedly complained to Knight about harassing treatment she had received from Stowe. (ECF No. 27-13, p. 8.[1]) Plaintiff further alleges that she told Knight that she (Plaintiff) wanted to file a formal workplace harassment complaint against Stowe. (Id.) Plaintiff claims that Knight told her (Plaintiff) that she (Knight) did not want Plaintiff to file a harassment report because it would create a "big issue." (Id.) Also on April 18, 2008, Knight received information from Singletary that Plaintiff had complained to her about harassment and bullying by co-workers. (ECF No. 23-2, p. 69 at 270:19-21; ECF No. 23-4, p. 19 at 72:2-16.)

In response to the information she had received regarding harassment, Knight sent an e-mail to Mary Sue Sawyer, Director of the Laboratory Services Department, informing Sawyer about Plaintiff's allegations of harassment from "one of her coworkers." (ECF No. 27-8, p. 7.) Knight told Sawyer that she had not spoken with Plaintiff about the alleged harassment. (Id.) Knight further asked Sawyer whether human resources should review the issue. (Id.)

On April 21, 2008, Sawyer and Knight sought guidance from their HR Business Partner, Donna Brown. (ECF No. 23-7, pp. 20-21 at 74:17-79:2; ECF No. 23-4, pp. 19-20 at 72:17-73:7.)

---

[1]The facts in this paragraph were recited in Plaintiff's interrogatory responses, which Plaintiff verified on September 19, 2011. (ECF No. 36.)

4

Brown advised Knight and Sawyer to investigate Plaintiff's allegations before implementing the PIP. (ECF No. 23-6, p. 5 at 14:3-15:8.)  As instructed by Brown, Knight and Sawyer met with Plaintiff, and specifically asked Plaintiff if she felt she was being "harassed."  (ECF No. 23-7, p. 21 at 79:3-18; ECF No. 23-4, p. 20 at 73:11-74:2.)  Plaintiff responded "no" and that everything was fine.  (Id.)  Since Plaintiff said there was no problem, Knight and Sawyer gave Plaintiff the PIP and a disciplinary action report.  (ECF No. 23-7, p. 21 at 78:8-11; ECF No. 23-3, pp. 17-20.)

On April 22, 2008, Plaintiff met with Knight again regarding the PIP.  (ECF No. 23-4, pp. 21-22 at 79:13-81:19)  Plaintiff explained to Knight that she (Plaintiff) thought the PIP was "unfair" because it incorrectly accused her, without any supporting facts, of "poor judgment in personal interactions with coworkers," "inappropriate comments about coworkers," "lack of respect to her coworkers," not progressing in training at the rate expected, and "difficulty interpreting procedures." (ECF No. 23-2, p. 70 at 273:1-276:25; ECF No. 23-3, pp. 19-20.)  On May 5, 2008, Plaintiff contacted Brown, who told Plaintiff that she could file a rebuttal statement in response to the PIP.  (ECF No. 23-2, p. 72 at 283:1-284:11.)

Also on May 5, 2008, Knight gave Plaintiff a second disciplinary action report for unsatisfactory work performance.  (ECF No. 23-3, pp. 21-22; ECF No. 23-4, p. 24 at 89:7-90:7.)  The report cited three specific events where Plaintiff had made mistakes in performing procedures.  (ECF No. 23-3, p. 22.)  The report noted that the next occurrence could result in suspension or termination.  (ECF No. 23-3, p. 21.)

On May 6, 2008, Plaintiff submitted her rebuttal letter to Knight.  (ECF No. 23-3, pp. 25-26.)  Plaintiff detailed how her training and performance had been negatively affected by the hostility and unhelpfulness she had experienced.  (Id.)  Plaintiff denied that her performance had

been unsatisfactory, attributed her mistakes to inadequate training, and explained her perception of the differences between her training and that received by other new trainees. (Id.)

On May 14, 2008, Knight again met with Plaintiff regarding her poor work performance. (ECF No. 23-4, p. 27 at 104:3-25.) On this occasion, Plaintiff alleges that she told Knight that she (Plaintiff) wanted to file a formal complaint of discrimination and harassment. (ECF No. 23-2, p. 74 at 289:17-290:1.) Knight then took Plaintiff to speak with Sawyer. (Id. at 290:2-3.) Plaintiff reiterated her statement to Sawyer, who allegedly replied that she did not want Plaintiff to file a formal complaint of discrimination. (ECF No. 23-2, p. 74 at 290:4-19 & 292:1-14.)

Plaintiff had a second meeting with Sawyer and Knight on the afternoon of May 14, 2008. At that time, Sawyer informed Plaintiff that she was being terminated. (ECF No. 23-2, pp. 74-75 at 292:15-293:21.) Plaintiff received a third disciplinary action report that stated that Plaintiff was discharged for "Unsatisfactory/Poor Work Performance." (ECF No. 23-3, p. 23.) Plaintiff alleges that Sawyer told her that she (Plaintiff) was terminated because she did not fit in. (ECF No. 23-2, p. 74 at 292:20-24.) Plaintiff grieved her termination and the termination was upheld. (ECF No. 23-2, p. 78 at 305:17-22.)

On August 27, 2008, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC), alleging discrimination on grounds of race, color, and national origin; and retaliation. (ECF No. 1 ¶ 4.) The EEOC issued a "Notice of Suit Rights" letter on August 31, 2009. (Id.) Plaintiff received the right to sue letter from the EEOC on September 2, 2009. (Id.) Thereafter, on November 24, 2009, Plaintiff timely filed this lawsuit alleging two causes of action under Title VII. (See ECF No. 1.) Plaintiff alleged that Defendant discriminated against her on the basis of her race, color, and national origin by

6

subjecting her to harassment resulting in a hostile work environment; and that Defendant unlawfully retaliated against Plaintiff by terminating her after she complained about the alleged harassment. (Id.) On February 4, 2010, Defendant filed an Answer to Plaintiff's Complaint, denying her allegations and asserting that any actions taken were based on legitimate, non-discriminatory and non-retaliatory reasons. (ECF No. 9.)

## II. LEGAL STANDARD AND ANALYSIS

### A. Standard

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to—including those portions to which only "general and conclusory" objections have been made—for clear error. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1).

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986) (citing First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. See Latif v. The Community College of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec.9, 2009).

A plaintiff may demonstrate a violation of Title VII through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a prima facie case of a violation of Title VII, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action. Merritt v. Old

8

Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010). If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

**B.      Plaintiff's Hostile Work Environment Claim**

The Magistrate Judge found that Plaintiff could not establish a hostile work environment claim. (ECF No. 30, p. 14.) Specifically, the Magistrate Judge found that Plaintiff could not show that the unwelcome treatment she received was because of her race, color, or national origin; the behavior alleged by Plaintiff did not rise to the severe and pervasive standard required to state a claim for a hostile work environment; and no basis existed for imputing liability to Defendant. (ECF No. 30, pp. 12-15.)

In her objections to the Report and Recommendation, Plaintiff asserts that the Magistrate Judge erred in granting summary judgment in favor of Defendant on her hostile work environment claim. Plaintiff argues that she has shown that she, as a Filipino and the only non-white employee in the Laboratory Services Department, was harassed by her trainers on account of her race, color and national origin; the harassment was subjectively and objectively unwelcome and was sufficiently severe to interfere with her training and work performance by setting her up for failure at a critical time in her employment; and that Defendant failed to take reasonable measures to prevent or redress the harassment of which Plaintiff complained. (ECF No. 34, p. 11.) In addition, Plaintiff argues that Knight and Sawyer tried to dissuade Plaintiff from filing a harassment complaint, which conduct is sufficient to impute liability to Defendant.

(Id.)  Plaintiff further argues that she has provided evidence upon which a jury could find Defendant's alleged reason for disciplining and terminating Plaintiff for poor performance was pretext for discrimination.  (Id.)  As a result, Plaintiff asserts that the evidence of record, in the light most favorable to her, establishes the existence of genuine disputes of material fact to survive Defendant's motion for summary judgment.  (Id.)  The court disagrees.

Title VII prohibits an employer from subjecting an employee to a hostile work environment because of race, color, or national origin.  42 U.S.C. § 2000e-2(a)(1).  To state a prima facie case of a hostile work environment based on race, color, or national origin, a plaintiff must demonstrate that: "(1) she experienced unwelcome harassment; (2) the harassment was based on her race, color, or national origin . . . ; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer."  Chao v. Rivendell Woods, Inc., 415 F.3d 342, 347 (4th Cir. 2005); White v. BFI Waste Servs., LLC, 375 F.3d 288, 297 (4th Cir. 2004); Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

To meet the causation element, a plaintiff must show that "but for" the protected characteristic, she would not have been a victim of harassment.  See Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998).  The "severe or pervasive" third element of a hostile work environment claim "has both subjective and objective components."  Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th Cir. 2003).  First, a plaintiff must show that she "subjectively perceive[d] the environment to be abusive."  Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993).  Second, a plaintiff must demonstrate that the conduct was such that "a reasonable person in the plaintiff's position" would have found the environment objectively hostile or abusive.  Oncale v.

10

Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82 (1998).  Actionable harassment occurs when the workplace is "permeated with discriminatory intimidation, ridicule, and insult." Harris, 510 U.S. at 21.  Title VII is not a "general civility code."  Oncale, 523 U.S. at 80. Further, when analyzing the third element, courts examine the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct and its severity; whether it is physically threatening or humiliating or merely constitutes offensive verbal statements; and whether it unreasonably interferes with an employee's work performance.  See Harris, 510 U.S. at 23; Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996); see also E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008) (stating that complaints that would objectively give rise to bruised or wounded feelings or incidents that are premised on nothing more than rude treatment, callous behavior, or a routine difference of opinion and personality conflict will not satisfy the severe or pervasive standard).

After careful review of the record, the court concurs in the Magistrate Judge's conclusion that Plaintiff has failed to establish a prima facie case of hostile work environment in violation of Title VII.  The conduct Plaintiff characterizes as harassment simply does not rise to the level required by law to establish a hostile work environment.  Compare E.E.O.C. v. Central Wholesalers, Inc., 573 F.3d 167, 176 (4th Cir. 2009) (finding alleged gender-based and race-based harassment was sufficiently severe or pervasive where co-workers referred to women as bitches and a co-worker in a cubicle next to the plaintiff had Playboy items, watched pornography in front of her, had a pornographic screensaver, and placed a screwdriver in a Halloween decoration in a sexual manner and where co-workers used racial epithets, some directed at the plaintiff, and two co-workers "kept blue-colored mop-head dolls in their offices

which they had hanging by nooses tied around the dolls' necks"), and <u>Spriggs v. Diamond Auto Glass</u>, 242 F.3d 179 (4th Cir. 2001) (holding that supervisor's constant, even daily, use of racial epithets was sufficiently severe or pervasive to survive summary judgment), and <u>Amirmokri v. Baltimore Gas & Elec. Co.</u>, 60 F.3d 1126, 1131 (4th Cir. 1995) (finding the alleged harassment was sufficiently severe or pervasive because an Iranian plaintiff was called "names like 'the local terrorist,' a 'camel jockey' and 'the Emir of Waldorf'" on an almost daily basis).  In this regard, Plaintiff has failed to meet her burden of establishing that the unwelcome treatment she received was because of her race, color, or national origin.  Plaintiff has further failed to show that the unwelcome conduct was objectively hostile or abusive.  Based upon the foregoing, Plaintiff has failed to present sufficient evidence to raise a genuine issue of fact as to whether Defendant subjected Plaintiff to a hostile work environment based on her race, color, or national origin in violation of Title VII.  Therefore, Plaintiff's objections to the Magistrate Judge's Report and Recommendation are without merit and her claim for hostile work environment fails as a matter of law.

**C.**     **Plaintiff's Retaliation Claims**

The Magistrate Judge found that Plaintiff could not establish a retaliation claim under Title VII because she could not show that she was fired because she engaged in protected activity. (ECF No. 30, pp. 17-18.)  The Magistrate Judge further determined that there was no evidence that Defendant's stated legitimate reason for terminating Plaintiff was a pretext for retaliation. (<u>Id.</u>)

Plaintiff contends that the Magistrate Judge erred in rejecting her retaliation claim. Plaintiff argues that she produced probative, direct evidence of retaliation, as well as evidence

creating an inference of pretext, arising from the close temporal proximity between Plaintiff's announcement that she wished to file a formal workplace harassment complaint and the decision made by Knight and Sawyer to terminate Plaintiff.  (ECF No. 34, p. 9.)  As a result, Plaintiff asserts that there is strong admissible evidence upon which a reasonable jury could find that she was retaliated against in violation of Title VII.  (ECF No. 34, p. 10.)  The court agrees.

Title VII also protects individuals from retaliation by providing that it is an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, . . . in any manner in an investigation . . . under this subchapter." 42 U.S.C. § 2000e-3(a).  To demonstrate a prima facie case of retaliation under Title VII, a plaintiff must show "(1) that she engaged in protected activity; (2) that her employer took an adverse employment action against her; and (3) that a causal connection existed between the protected activity and the asserted adverse action."  See Munday v. Waste Mgmt. of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997).  As to the first element, "[o]pposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin v. Metropolitan Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998).  "As long as an employee complains to his or her employer or participates in an employer's informal grievance procedure in an orderly and nondisruptive manner, the employee's activities are entitled to protection under § 704's opposition clause."  Kubicko v. Ogden Logistics Serv., 181 F.3d 544, 551 (4th Cir. 1999).  A plaintiff meets the second element of this test if "a reasonable employee would have found the challenged action materially adverse," meaning that it "might

have dissuaded a reasonable worker from making or supporting a charge of discrimination."
Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).  The third element of the
test may be satisfied merely by close temporal proximity between the protected activity and the
adverse employment action.  See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).

　　　In its brief in support of summary judgment, Defendant conceded that Plaintiff could
satisfy the first two elements of a prima facie case of retaliation.  (ECF No. 23-1, pp. 27-28.)  As
for the causal connection, there is evidence in the record that Plaintiff's employment was
terminated either "a few weeks after" and/or a few "hours after" she expressed a desire to file a
formal complaint alleging harassment.  The Fourth Circuit Court of Appeals has held that "very
little evidence of a causal connection is required to establish a prima facie case" and "merely the
closeness in time between the filing of a discrimination charge and an employer's firing an
employee is sufficient" to satisfy the causation element of a prima facie retaliation case.  Tinsley
v. First Union Nat'l Bank, 155 F.3d 435, 443 (4th Cir. 1998); see also Williams v. Cerberonics,
Inc., 871 F.2d 452 (4th Cir. 1989) (holding three-month time period between protected activity
and termination sufficient to satisfy the causation element of the prima facie case of retaliation);
Carter v. Ball, 33 F.3d 450 (4th Cir. 1994) (finding causal link between filing of retaliation
complaints and the plaintiff's demotion five months later).  The court is persuaded that the
temporal proximity of Plaintiff's termination to her complaint(s) of harassment satisfies the
causation element of her prima facie case.  As such, Plaintiff has established a prima facie case
of retaliation.

　　　Defendant has also proffered a legitimate, nondiscriminatory reason for Plaintiff's
termination: her poor job performance.  Accordingly, the burden shifts to Plaintiff to show

pretext. Plaintiff argues that pretext can be shown by the following: (1) Knight's testimony confirming that there were two meetings on May 14, 2008, the day of Plaintiff's discharge; (2) Knight's testimony confirming that it was not her intention to terminate Plaintiff at the first meeting on May 14, 2008; (3) testimony of Knight and Sawyer confirmed that they had in hand Plaintiff's rebuttal letter to the PIP during the first meeting; (4) Plaintiff's testimony asserting that during the first meeting she told Knight and Sawyer that she wanted to file a formal complaint of discrimination and harassment; (5) testimony of Knight and Sawyer confirming that the decision to discharge Plaintiff did not occur until after the first meeting; and (6) testimony of Plaintiff, Knight, and Sawyer confirming that Plaintiff was terminated at a second meeting between the individuals on May 14, 2008.  Based upon the foregoing, Plaintiff has presented evidence from which a reasonable jury could find that Defendant's articulated reason for terminating Plaintiff was a pretext for unlawful retaliation.  Therefore, Plaintiff's objection to the Report and Recommendation has merit and summary judgment should not be granted to Defendant on Plaintiff's claim for retaliation.

### III.  CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** the motion for summary judgment, ECF No. 23, of Defendant Palmetto Health Alliance, also known as Palmetto Health, with respect to Plaintiff's claim for hostile work environment.  The court **DENIES** Defendant's motion for summary judgment with respect to Plaintiff's claim for retaliation.  The court accepts, in part, the Magistrate Judge's Report and Recommendation and

15

incorporates it herein by reference.

**IT IS SO ORDERED**.


/s/Margaret B. Seymour
MARGARET B. SEYMOUR
UNITED STATES DISTRICT JUDGE

September 29, 2011
Columbia, South Carolina

16